IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. KNABB, III, and TRACY L. KNABB, Individually and as Parents and Natural Guardians of Joanne D. Knabb, a Minor,<br><br>    Plaintiffs<br><br>    v.<br><br>INTERNATIONAL BIOMEDICAL, INC., a Texas Corporation, t/d/b/a Airborne Life Support Systems,<br><br>    Defendant and Third Party Plaintiff<br><br>    v.<br><br>STEPHEN G. WOODS, Administrator of the Estate of John E. Bridge, Deceased; CHILDREN'S HOSPITAL OF PITTSBURGH; and GUARDIAN ANGEL AMBULANCE SERVICES, INC.,<br><br>    Third Party Defendants | Civil Action No. 04-215 Erie<br><br><br><br>JURY TRIAL DEMANDED |

**IBI RESPONSE TO CHP NON-COMPLEX DISCOVERY MOTION SEEKING REIMBURSEMENT**

Defendant and third party plaintiff International Biomedical, Inc. respectfully submits the following IBI Response to CHP Non-Complex Motion Seeking Reimbursement.

1. This action was commenced by plaintiffs John D. Knabb, III, Tracy L. Knabb and Joanne D. Knabb on July 26, 2004 against defendant International Biomedical, Inc. ("IBI"). On October 18, 2004 IBI joined Stephen G. Woods, Administrator of the Estate of John E. Bridge, Deceased, Children's Hospital of Pittsburgh ("CHP") and Guardian Angel Ambulance Services, Inc. ("Guardian Angel"), as third party defendants.

2. John D. Knabb, III and Tracy L. Knabb are the biological parents of Joanne D. Knabb, whose date of birth was February 19, 2003. Joanne was born at UPMC Northwest ("UPMC"), a hospital located at 1 Spruce Street, Franklin, Venango County, Pennsylvania, with a congenital defect of her heart known as a ventricular septal defect ("VSD"), or a "hole" in the wall between the two lower chambers of her heart.

3. It was determined after Joanne's birth that she would be taken to CHP on February 25, 2003 to assess the VSD and determine a medical course of action. However, on February 22, 2003 she developed jaundice and difficulty breathing, as a result of which it was determined that she would be taken to CHP on an emergency basis in the early morning of February 23, 2003.

4. At UPMC during the early morning of February 23, 2003 Joanne was intubated with an endotracheal tube, which was attached to a mechanical ventilator, and she was placed in an infant incubator that was part of an infant transport system by a transfer team comprised of employees of CHP and Guardian Angel, and the infant transport system was placed in the back of an ambulance owned by Guardian Angel and operated by an employee of Guardian Angel. The ambulance then traveled toward CHP in Pittsburgh, Pennsylvania occupied by the Guardian Angel and CHP employees, Joannne, who occupied the incubator, and Mrs. Knabb, who sat in the right front seat of the ambulance.

5. While traveling southwardly on Pennsylvania State Route 8, a divided highway, in Victory Township, Venango County, Pennsylvania, the Guardian Angel ambulance collided head-on in the easternmost southbound lane of Route 8 with a motor vehicle traveling northwardly in that same lane, which vehicle was operated by John E. Bridge, who died in the collision. Several members of the transfer team were injured. The infant transport system was thrown about the rear of the ambulance, the Plexiglas enclosure to the incubator fracturing, as a result of which Joanne suffered severe head trauma.

6.      The infant transport system was fastened to the interior of the rear of the ambulance by a device referred to as a "retractable bar," which was a component of the infant transport system. The infant transport system, including the retractable bar, was designed and manufactured by IBI, and it was sold by IBI to CHP, which owned it at the time of the collision between the Guardian Angel ambulance and the motor vehicle operated by Mr. Bridge on State Route 8 on the morning of February 23, 2003. The retractable bar fractured in the collision.

7.      The Knabbs asserted in their complaint in this action that the infant transport system was defective in design and contained inadequate warnings, as a proximate result of which Joanne sustained her severe head trauma and consequent damages, for which IBI is liable. IBI asserted in its third party complaint against Mr. Bridge, CHP and Guardian Angel that Mr. Bridge and Guardian Angel were liable over to IBI by virtue of their negligent operation of the two vehicles, and Guardian Angel and CHP were liable over to IBI because they negligently failed to ensure that fasteners designed to hold the components of the infant transport system together were fastened prior to the time the collision occurred.

8.      On February 23, 2003 and at the time this action was commenced the Knabbs resided in Oil City, Venango County, Pennsylvania. However, in 2004 they moved their residence to a town located about 100 miles south of Houston, Texas and they have resided at that location on a continuous basis ever since. Mr. and Mrs. Knabb are unemployed and the medical expenses associated with the continuing medical care of Joanne are being paid by Medical Assistance.

9.      IBI is a for-profit corporation organized and existing under Texas law and its principal place of business has been located in Austin, Texas throughout this litigation. CHP has been a nonprofit corporation and Guardian Angel has been a for-profit corporation throughout

this litigation, organized and existing under Pennsylvania law with principal places of business located in Pittsburgh, Pennsylvania.

10. In September 2005 counsel for the Knabbs and IBI's counsel initiated the scheduling of the discovery depositions of Mr. and Mrs. Knabb and three employees of IBI: John Segars (President), Gerald Manning (Director of Engineering) and John Taylor (Senior Mechanical Engineer). Mr. Segars, Mr. Manning and Mr. Taylor all work at the Austin, Texas headquarters of IBI and reside nearby, in Texas. Counsel for the Knabbs and IBI, and their representatives, arranged by agreement with counsel for the other parties that the depositions of Mr. and Mrs. Knabb would take place on the morning of November 11, 2005 at a hotel at the Houston, Texas airport, and the depositions of Messrs. Segars, Manning and Taylor would take place on the morning of November 10, 2005 at the headquarters of IBI in Austin, Texas.

11. The Knabb depositions were formally scheduled by notice mailed by IBI's counsel on October 21, 2005, while the IBI depositions were formally scheduled by notice mailed by the Knabbs' counsel on October 27, 2005. The court reporter for those depositions was retained by counsel for the Knabbs (IBI depositions) and IBI (Knabb depositions). The cost of the room in the Houston hotel in which the Knabb depositions were held was borne by IBI.

12. On November 3, 2005 counsel for IBI received an e-mail message from counsel for CHP, requesting that IBI pay the travel expenses of CHP's counsel to the depositions in Texas and, on November 4, 2005 counsel for IBI and CHP discussed this subject, IBI's counsel indicating he would confer with his client and advise CHP's counsel of its position as soon as possible. On November 7, 2005 IBI's counsel advised CHP's counsel that it was IBI's position that those expenses should be borne by CHP.

12. The discovery depositions of the IBI representatives were taken on November 10, 2005 at IBI's headquarters in Austin, Texas and were attended by counsel for the Knabbs, IBI,

CHP and Guardian Angel. The discovery depositions of the Knabbs were taken on November 11, 2005 in the airport hotel in Houston, Texas and were attended by the same counsel. Counsel for the Knabbs initially questioned the IBI employees, followed by counsel for CHP and Guardian Angel. Counsel for IBI initially questioned the Knabbs, followed by counsel for CHP and Guardian Angel. Counsel for IBI did not question the IBI employees and counsel for the Knabbs did not question the Knabbs.

13. Attached hereto and marked Exhibit A is a copy of a June 30, 2003 statement of Dun & Bradstreet with respect to CHP, which indicates that CHP's net worth as of June 30, 2003 was $402,057,000.00 and its annual sales were $296,167,000.00. (Exhibit A, p.1)

14. **Fed.R.Civ.P. 26(c)(2)** provides that "the court in which the action is pending . . . may make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression or undue burden or expense, including . . . that the . . . discovery may be had only on specified terms and conditions, including a designation of the time or place . . . ." Rule 26(c)(2) not only empowers the court to determine the time and place of depositions, as expressly provided in the rule, but also that the expenses of attending those depositions be borne by the opposing party. **Philadelphia Indemnity Insurance Co. v. Federal Insurance Co.**, 215 F.R.D. 492, 495 (E.D.Pa. 2003).

15. The deposition of a corporate officer or agent should ordinarily take place at the corporation's principal place of business or at the place of business or employment of the witness. **Id.** In the absence of exceptional or unusual circumstances the deposing party should be required to take the deposition at a location in the vicinity in which the deponent resides, even where the deponent is a party. **Metrex Research Corp. v. United States**, 151 F.R.D. 122, 125 (D.Colo. 1993); **General Leasing Co. v. Lawrence Photographic Supply, Inc.**, 84 F.R.D. 130, 131 (W.D.Mo. 1979).

16. A claim of financial hardship does not alone establish the compelling circumstances necessary to alter this rule. **Farquhar v. Shelden**, 116 F.R.D. 70, 72 (E.D.Mich. 1987); **General Leasing, supra**, 84 F.R.D. at 1312. Instead, the court should weigh a number of factors: (1) the cost involved and the relative abilities of the parties to absorb that cost; (2) the convenience to the parties and witnesses and, to a lesser extent, to counsel; (3) the likelihood of discovery disputes and the consequent need for the court to police them; (4) the nature of the litigation and the relationship of the parties; and (5) the materiality of the witnesses' testimony. **Resolution Trust Corp. v. Worldwide Insurance Management Corp.**, 147 F.R.D. 125, 127 (N.D.Tex. 1992); **Operative Plasterers' & Cement Masons' International Association of United States and Canada AFL-CIO**, 144 F.R.D. 87, 91 (N.D.Ind. 1992); **Mill-Run Tours, Inc. v. Khashoggi**, 124 F.R.D. 547, 550-1 (S.D.N.Y. 1989); **Turner v. Prudential Insurance Co. of America**, 119 F.R.D. 381, 383 (M.D.N.C. 1988); **Leist v. Union Oil Co. of California**, 82 F.R.D. 203, 204 (E.D.Wisc. 1979).

17. CHP's brief motion suggests that the mere fact that IBI joined CHP as a third party defendant requires that IBI bear the travel expenses of CHP's counsel relative to attendance at the depositions in Texas. However, as is clear from the above, who sued whom is not even a factor the courts consider when determining Rule 26(c)(2) motions. The only case cited by CHP, **Philadelphia Indemnity**, held that '[s]ince [the moving party in that case] is a large corporation capable of bearing the financial burden of traveling to California, and no equitable considerations weigh in favor of compelling [employees of the nonmoving party] to travel to [Philadelphia], we see no reason to depart from this general rule." **215 F.R.D. at 495.** As indicated by Exhibit A hereto, CHP is also a large corporation capable of bearing the expense of traveling to Texas from Pennsylvania and to return relative to the depositions taken in this action.

18. IBI scheduled the depositions of Mr. and Mrs. Knabb, not the depositions of the IBI employees, whose depositions were scheduled by the Knabbs' counsel in Texas. While the details of the Knabbs' financial circumstances are not of record, a reasonable inference can be drawn from their being unemployed and having no medical insurance that their traveling to Pennsylvania for their depositions would have been a financial hardship.

19. There are no equitable circumstances pleaded or proved by CHP that would justify an award of travel expenses relative to the attendance of their counsel at the depositions in Texas.

WHEREFORE, defendant and third party plaintiff International Biomedical, Inc. respectfully requests that the Court issue an order denying the Non-Complex Discovery Motion Seeking Reimbursement filed by third party defendant Children's Hospital of Pittsburgh.

Respectfully submitted,

/s/ James T. Marnen
James T. Marnen
PA I.D. No. 15858
KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.
120 West 10th Street
Erie, PA 16501
General Tel:  814-459-2800
Direct Dial Tel: 814-459-9886, ext. 203
Fax:   814-453-4530
E-mail:jmarnen@kmgslaw.com

Attorney for Defendant and Third Party
Plaintiff, International Biomedical, Inc.

COPYRIGHT 2004 DUN & BRADSTREET INC.

*IN DATE* Statement Date: JUN 30 2003

```
DUNS: 04-430-4145                           DATE PRINTED        SUMMARY
CHILDREN'S HOSPITAL OF                      OCT 05 2004         RATING --
PITTSBURGH
(SUBSIDIARY OF U P M C                      SPECIALTY HOSPITAL  STARTED 1887
HEALTH SYSTEM, PITTSBURGH,                  SIC NO.             SALES F $296,167,000
PA)                                         80 69               WORTH F $402,057,000
                                                                EMPLOYS 2,000
3705 5TH AVE                                (1,900 HERE)
AND BRANCH(ES) OR DIVISION(S)                                   HISTORY CLEAR
PITTSBURGH PA 15213                                             FINANCING SECURED
TEL: 412 692-5325                                               FINANCIAL
                                                                CONDITION GOOD
CHIEF EXECUTIVE: RONALD VIOLI, CHB-CEO
```

===========================================================================

SPECIAL EVENTS
09/23/04 On September 16, 2004 Hurricane Ivan hit the Panhandle of Florida
and the Alabama coast. Hurricane damage and flooding were reported in
the following states: FL, LA, AL, MS, NC, GA, OH, PA and Puerto Rico.
Our records reflect that this business operated in one of the hardest
hit counties. Operational impact of the hurricane to this business is
unknown at this time. D&B will conduct an ongoing investigation to
determine the status of this business.

===========================================================================
* * * CUSTOMER SERVICE * * *
===========================================================================
If you need any additional information or have any questions, please call the
D&B Online Customer Service Center at 1-800-223-1026.

===========================================================================
* * * SUMMARY ANALYSIS * * *
===========================================================================
The Summary Analysis section reflects information in D&B's file as of
October 4, 2004.

RATING SUMMARY . . . .

The Rating was changed on May 4, 2004 because the parent company's
Rating was lowered. It is D&B's practice to rate a subsidiary no higher
than its parent company. The absence of a Rating (--) indicates that
the information available to D&B does not permit us to assign a Rating
to this business. In this case, no Rating was assigned because the
parent company is rated "--". It is D&B's policy not to rate a
subsidiary higher than its parent. Therefore, this company is also
rated "--".

Below is an overview of the company's D&B Rating(s) since 01/01/91:

RATING      DATE APPLIED

```
------ -------------
-- 05/04/04
5A3 11/07/03
-- 09/27/03
5A3 11/05/98
BB3 10/19/98
5A3 12/04/97
-- 10/29/96
5A2 11/10/95
ER1 01/01/91
```

```
=========================================================================
* * * PAYMENT SUMMARY * * *
=========================================================================
```

The Payment Summary section reflects payment information in D&B's file as of the date of this report.

The PAYDEX for this company is 64.

This PAYDEX score indicates that payments to suppliers average 19 days beyond terms, weighted by dollar amounts. When dollar amounts are not considered, approximately 55% of the company's payments are within terms.

Below is an overview of the company's dollar-weighted payments, segmented by its suppliers' primary industries:

```
                       TOTAL    LARGEST   % DAYS SLOW
            TOTAL      DOLLAR   HIGH      W/IN
            RCV'D      AMOUNTS  CREDIT    TERMS  <31  31-60  61-90  91+
            -----      -------- --------- ------ ---  -----  -----  ---
            # $        $        %         %      %    %      %

Total in D&B's file    132      2,825,500  750,000

Top 10 Industries:

1  Mfg medical instrmnt    8   147,000    65,000   49   35    9    7   -
2  Whol computers/softwr   6  1,052,100  750,000   36   64    -    -   -
3  Whol medical equip      6   455,000   200,000   70   25    3    2   -
4  Mfg electromedcl prdt   4   217,750   200,000   50   47    -    3   -
5  Mfg refrig/heat equip   4    65,750    50,000   24    -    -    -  76
6  Mfg surgical supplies   3    81,000    60,000   14    -   49    -  37
7  Computer system desgn   2    80,000    55,000   50   34    -   16   -
8  Mfg manifold forms      2    55,100    55,000  100    -    -    -   -
9  Mfg analytic instrmnt   1   100,000   100,000    -  100    -    -   -
10 Whol misc profsn eqpt   1    65,000    65,000  100    -    -    -   -

11 OTHER INDUSTRIES       90   450,900    50,000   40   32    5   17   6

Other Payment Categories:

Cash experiences        0   0       0
Payment record unknown  4  55,650  55,000
Unfavorable comments    0   0       0
Placed for collection
  with D&B              1     250
other                   0   N/A
```

The highest "Now Owes" on file is $500,000
The highest "Past Due" on file is $80,000

Dun & Bradstreet has 132 payment experiences in its file for this company. For your convenience, we have displayed 80 representative experiences in the PAYMENTS section.

========================================================================

PAYMENTS (Amounts may be rounded to nearest figure in prescribed ranges)

Antic - Anticipated (Payments received prior to date of invoice)
Disc - Discounted (Payments received within trade discount period)
Ppt - Prompt (Payments received within terms granted)

```
REPORTED  PAYING       HIGH    NOW   PAST   SELLING   LAST SALE
RECORD    CREDIT       OWES    DUE   TERMS  WITHIN

09/04     Ppt          200000  -0-   -0-    N30       1 Mo
          Ppt          55000   20000 -0-    N30       1 Mo
          Ppt          500     -0-   -0-    N30       4-5 Mos
          Ppt          250     50    -0-              1 Mo
          Ppt          50      -0-   -0-    N30       6-12 Mos
          Ppt-Slow 30  750000  500000 45000 N30       1 Mo
          Ppt-Slow 30  1000    100   -0-              1 Mo
          Ppt-Slow 90  500     500   500              6-12 Mos
          Slow 30      250     -0-   -0-              4-5 Mos
          Slow 30      100     -0-   -0-              6-12 Mos
          Slow 60      100     -0-   -0-    N30       6-12 Mos
          Slow 60      50      50    50               2-3 Mos
          Slow 60+     250     250   250              1 Mo
08/04     Disc 250 250 50 2 10 N30 1 Mo
          Ppt          15000   1000  -0-              1 Mo
          Ppt          15000   15000 -0-    N30       1 Mo
          Ppt          10000   100   -0-    N30       1 Mo
          Ppt          10000   -0-   -0-    N30       6-12 Mos
          Ppt          7500    -0-   -0-              6-12 Mos
          Ppt          5000    -0-   -0-              2-3 Mos
          Ppt          5000    -0-   -0-              6-12 Mos
          Ppt          1000    -0-   -0-              4-5 Mos
          Ppt          750     -0-   -0-              2-3 Mos
          Ppt          500     -0-   -0-    N30       1 Mo
          Ppt          500     500   -0-    N30       1 Mo
          Ppt          250     -0-   -0-              2-3 Mos
          Ppt          250     -0-   -0-    N30       6-12 Mos
          Ppt          50      -0-   -0-              1 Mo
          Ppt          50      -0-   -0-              6-12 Mos
          Ppt          50      -0-   -0-              4-5 Mos
          Ppt          50      50    -0-              1 Mo
          Ppt-Slow 15  5000    1000  250   2 10 N30   1 Mo
          Ppt-Slow 30  30000   500   -0-              1 Mo
          Ppt-Slow 30  25000   10000 -0-    N30       1 Mo
          Ppt-Slow 30  2500    750   -0-              1 Mo
          Ppt-Slow 30  2500    750   750    N30       1 Mo
          Ppt-Slow 30  1000    1000  250              1 Mo
          Ppt-Slow 30  750     100   50               1 Mo
          Ppt-Slow 30  500     -0-   -0-              2-3 Mos
```

EXHIBIT A000000003

```
Ppt-Slow 30 500 -0- -0- N30 4-5 Mos
Ppt-Slow 30 250 -0- -0- N30 4-5 Mos
Ppt-Slow 30 250 50 -0- 1 Mo
Ppt-Slow 30 250 250 50 1 Mo
Ppt-Slow 30 100 -0- -0- N30 2-3 Mos
Ppt-Slow 60 20000 15000 5000 1 Mo
Ppt-Slow 60 20000 1000 -0- N30 1 Mo
Ppt-Slow 60 7500 5000 1000 1 Mo
Ppt-Slow 60 250 -0- -0- N30 6-12 Mos
Ppt-Slow 90 20000 500 -0- 1 Mo
Ppt-Slow 90 15000 10000 5000 N30 1 Mo
Slow 5 1000 500 100
Slow 10 100000 10000 7500 N30 1 Mo
Slow 10 20000 2500 -0- N30 1 Mo
Slow 15 2500 750 750 1 Mo
Slow 15 1000 -0- -0- N30 2-3 Mos
Slow 15 750 250 -0- 1 Mo
Slow 30 35000 20000 -0- 1 Mo
Slow 30-60 1000 -0- -0- 6-12 Mos
Slow 60 500 -0- -0- N30 4-5 Mos
Slow 60 50 -0- -0- 6-12 Mos
Slow 30-90 20000 20000 7500 N30 1 Mo
Slow 30-90+ 1000 -0- -0- 4-5 Mos
Slow 30-120 30000 -0- -0- 2-3 Mos
Slow 30-120 250 -0- -0- N30 6-12 Mos
Slow 120 100 100 100
Slow 120+ 250 250 250
07/04 Ppt 2500 1000 -0- 1 Mo
Ppt 50 -0- -0- 4-5 Mos
Disc-Slow 30 10000 -0- -0- 6-12 Mos
Slow 45 1000 -0- -0- N30 6-12 Mos
Slow 120 50 50 -0-
06/04 Ppt 65000 30000 250 N30 1 Mo
Ppt-Slow 120 750 750 250 1 Mo
Slow 30-60 10000 5000 100 1 Mo
05/04 Ppt-Slow 30 200000 100000 40000 1 Mo
04/04 Ppt-Slow 30 65000 15000 2500 N30 1 Mo
Ppt-Slow 90 25000 -0- -0- 6-12 Mos
02/04 Ppt 7500 7500 -0- 1 Mo
12/03 Slow 120+ 50000 50000 50000 N30
08/03 Slow 60-120 60000 -0- -0- 2-3 Mos
```

* Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of disputes over merchandise, skipped invoices etc.
* Each experience shown represents a separate account reported by a supplier. Updated trade experiences replace those previously reported.

================================================================================

FINANCE
06/11/04 Fiscal Fiscal Fiscal
Consolidated
Jun 30 1998 Jun 30 2001 Jun 30 2002
Curr Assets 59,872,000 77,251,000 78,833,000
Curr Liabs 34,176,000 53,802,000 61,432,000
Current Ratio 1.75 1.44 1.28

```
Working Capital 25,696,000 23,449,000 17,400,000
Other Assets 345,713,000 417,686,000 402,040,000
Worth 280,589,000 356,803,000 334,915,000
Sales 170,852,000 257,579,000 185,557,000
Long Term Liab 90,820,000 84,332,000 84,525,000
Net Profit (Loss) 4,946,000 21,783,000 9,659,000
Fiscal statement dated JUN 30 2003:
Cash $ 18,115,000       Accts Pay $ 13,548,000
Accts Rec 34,581,000    3rd Party 2,179,000
Inventory 4,482,000     Accruals 11,559,000
Grant Rec 17,653,000    L.T. Liab-(1yr) 543,000
Other Rec 839,000       Deferred Rev 22,220,000
Due From                Other Curr Liabs 145,768,000
Foundation 795,000
Due FromUPMC 2,677,000
Other Curr Assets 4,685,000
---------------         ---------------
Curr Assets 83,827,000  Curr Liabs 195,817,000
Fixt & Equip 246,504,000
Investments-Other 23,487,000
Other Assets 244,056,000 Total Net Assets 402,057,000
---------------         ---------------
Total Assets 597,874,000 Total 597,874,000
```

From JUL 01 2002 to JUN 30 2003 annual sales
$296,167,000. Gross profit $296,167,000; operating expenses
$3,666,000. Operating income $292,501,000; other expenses
$3,288,000. Net income $289,213,000.
Submitted by David Laffey. Extent of audit, if any, not
indicated.
--0--
Accounts receivable shown net less $6,377,000 allowance.
The financial statement dated June 30, 2002 represents 8 months
of operation, as the entity has been under the control of U P M C
Health System, Pittsburgh, PA since October 2001.
On June 11, 2004, Dave Laffey, Director, confirmed company name,
address, principals, annual sales and operational information using
Dun & Bradstreet's Internet-based update method (eUpdate) at
www.dnb.com.

Dun & Bradstreet's usual practice is not to Rate a Subsidiary
higher than its Parent. The Tangible Net Worth and financial
condition of the Parent have been used as one factor in Rating this
business. A copy of the report on the Parent is available if further
information is required.

================================================================================

PUBLIC FILINGS

The following data is for information purposes only and is not the
official record. Certified copies can only be obtained from the
official source.

--------------------------------------------------------------------------------
* * * JUDGMENT(S) * * *
--------------------------------------------------------------------------------
DOCKET NO.: GD 00016-94

```
JDGMT TYPE: Judgment STATUS: Unsatisfied
AGAINST: $610-CHILDREN'S HOSPITAL VALET DATE STATUS ATTAINED: 01/03/1994
PARKING DATE ENTERED: 01/03/1994
IN FAVOR OF: JAMES T. JOWERS LATEST INFO RECEIVED: 04/20/1994
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-------------------------------------------------------------------------
If it is indicated that there are defendants other than the
report subject, the lawsuit may be an action to clear title
to property and does not necessarily imply a claim for money
against the subject.
-------------------------------------------------------------------------
* * * SUIT(S) * * *
-------------------------------------------------------------------------
DOCKET NO.: GD-02-15146
PLAINTIFF: HOLLY GOETTLER STATUS: Pending
DEFENDANT: CHILDREN'S HOSPITAL OF DATE STATUS ATTAINED: 08/08/2002
PITTSBURGH DATE FILED: 08/08/2002
CAUSE: COMPLAINT - CIVIL ACTION LATEST INFO RECEIVED: 06/30/2004
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-------------------------------------------------------------------------
DOCKET NO.: 4055 OF 2002
PLAINTIFF: EHAAB JAMAL STATUS: Judgment for plaintiff
DEFENDANT: CHILDREN'S HOSPITAL OF DATE STATUS ATTAINED: 01/27/2003
PITTSBURGH, PITTSBURGH, PA DATE FILED: 07/10/2002
and OTHERS LATEST INFO RECEIVED: 10/21/2003
CAUSE: COMPLAINT - CIVIL ACTION
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-------------------------------------------------------------------------
DOCKET NO.: GD 13361-01
PLAINTIFF: JACQUELINE FIELDER STATUS: Pending
DEFENDANT: CHILDREN'S HOSPITAL OF DATE STATUS ATTAINED: 07/10/2001
PITTSBURGH DATE FILED: 07/10/2001
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY, LATEST INFO RECEIVED: 07/28/2004
PITTSBURGH, PA
-------------------------------------------------------------------------
DOCKET NO.: GD 15786-00
PLAINTIFF: GRETCHEN STEWART STATUS: Settled
SCOTT STEVENS DATE STATUS ATTAINED: 04/28/2003
GAGE E. STEVENS DATE FILED: 09/18/2000
DEFENDANT: CHILDREN'S HOSPITAL OF LATEST INFO RECEIVED: 11/10/2003
PITTSBURGH
and OTHERS
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-------------------------------------------------------------------------
DOCKET NO.: GD 14714-00
PLAINTIFF: KRISTI HERTWECK ZUGAI STATUS: Pending
LUKE D. HERTWECK DATE STATUS ATTAINED: 08/28/2000
DEFENDANT: CHILDREN'S HOSPITAL OF DATE FILED: 08/28/2000
PITTSBURGH LATEST INFO RECEIVED: 06/29/2004
and OTHERS
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-------------------------------------------------------------------------
```

EXHIBIT A000000006

```
DOCKET NO.: GD-00-8850
PLAINTIFF: ELIZABETH FRAMELI                STATUS: Settled
ADMINISTRATRIX                              DATE STATUS ATTAINED: 09/12/2003
DEFENDANT: CHILDREN'S HOSPITAL OF           DATE FILED: 05/18/2000
PITTSBURGH                                  LATEST INFO RECEIVED: 03/29/2004
CAUSE: COMPLAINT - CIVIL ACTION
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-----------------------------------------------------------------------
DOCKET NO.: GD 03662-00
PLAINTIFF: SHERYL APITSCH                   STATUS: Dismissal without
AYLA M. APITSCH                             prejudice
DEFENDANT: CHILDRENS HOSPITAL OF            DATE STATUS ATTAINED: 03/07/2003
PITTSBURGH                                  DATE FILED: 03/02/2000
and OTHERS                                  LATEST INFO RECEIVED: 10/15/2003
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-----------------------------------------------------------------------
DOCKET NO.: GD 01172-00
PLAINTIFF: CHESTER GREEN                    STATUS: Settled
BRANDON A. GREEN                            DATE STATUS ATTAINED: 06/19/2002
JOY GREEN                                   DATE FILED: 01/21/2000
DEFENDANT: CHILDREN'S HOSPITAL OF           LATEST INFO RECEIVED: 07/27/2004
PITTSBURGH
and OTHERS
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-----------------------------------------------------------------------
DOCKET NO.: GD 17546-99
PLAINTIFF: $2,175-TELEDATA COMMUNICATIONS   STATUS: Settled
INC                                         DATE STATUS ATTAINED: 08/29/2002
JOANN PHILLIPS                              DATE FILED: 11/03/1999
LINDA MARIE PHILLIPS                        LATEST INFO RECEIVED: 11/06/2003
DEFENDANT: CHILDREN'S HOSPITAL OF
PITTSBURGH
and OTHERS
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-----------------------------------------------------------------------
DOCKET NO.: 2457 OF 98
PLAINTIFF: MCRAE TOLON                      STATUS: Dismissal with prejudice
JOSHUA HARFIELD                             DATE STATUS ATTAINED: 11/09/2000
DEFENDANT: CHILDREN'S HOSPITAL OF           DATE FILED: 04/16/1998
PITTSBURGH                                  LATEST INFO COLLECTED: 07/11/2003
WHERE FILED: ALLEGHENY COUNTY PROTHONOTARY,
PITTSBURGH, PA
-----------------------------------------------------------------------
* * * UCC FILING(S) * * *
-----------------------------------------------------------------------
COLLATERAL: Negotiable instruments and proceeds - Fixtures and proceeds -
Machinery and proceeds - Building(s) and proceeds - Leased
Equipment and proceeds
FILING NO: 36800144                         DATE FILED: 11/04/2002
TYPE: Original                              LATEST INFO RECEIVED: 02/19/2003
SEC. PARTY: HIGHMARK INC, PITTSBURGH, PA    FILED WITH: SECRETARY OF
DEBTOR: CHILDREN'S HOSPITAL OF              STATE/UCC DIVISION,
PITTSBURGH OF UPMC HEALTH SYSTEM            PA
```

PITTSBURGH, PA

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
--------------------------------------------------------------------------
COLLATERAL: Negotiable instruments
FILING NO: 30901178 DATE FILED: 11/04/1999
TYPE: Original LATEST INFO RECEIVED: 12/06/1999
SEC. PARTY: CHASE MANHATTAN TRUST CO NA FILED WITH: SECRETARY OF
SUCCESSOR TRUSTEE, PITTSBURGH, STATE/UCC DIVISION,
PA PA
DEBTOR: CHILDREN'S HOSPITAL OF
PITTSBURGH

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
--------------------------------------------------------------------------
COLLATERAL: Inventory and proceeds - Account(s) and proceeds - Computer
equipment and proceeds - Contract rights and proceeds - and OTHERS
FILING NO: 34550391 DATE FILED: 11/05/2001
TYPE: Original LATEST INFO RECEIVED: 12/21/2001
SEC. PARTY: CHILDREN'S HOSPITAL OF FILED WITH: SECRETARY OF
PITTSBURGH FOUNDATION, STATE/UCC DIVISION,
PITTSBURGH, PA PA
DEBTOR: CHILDREN'S HOSPITAL OF
PITTSBURGH OF UPMC HEALTH SYSTEM

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
--------------------------------------------------------------------------
COLLATERAL: Accounts receivable and proceeds - General intangibles(s) and
proceeds - Chattel paper and proceeds - Equipment and proceeds
FILING NO: 33201475 DATE FILED: 10/20/2000
TYPE: Original LATEST INFO RECEIVED: 10/27/2000
SEC. PARTY: MCKESSON HBOC CAPITAL CORP, SAN FILED WITH: SECRETARY OF
FRANCISCO, CA STATE/UCC DIVISION,
DEBTOR: CHILDREN'S HOSPITAL OF PA
PITTSBURGH

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
--------------------------------------------------------------------------
COLLATERAL: Accounts receivable and proceeds - General intangibles(s) and
proceeds - Chattel paper and proceeds - Contract rights and
proceeds
FILING NO: 30901180 DATE FILED: 11/04/1999
TYPE: Original LATEST INFO RECEIVED: 12/06/1999
ASSIGNEE: CHASE MANHATTAN TRUST CO NA FILED WITH: SECRETARY OF
SUCCESSOR TRUSTEE, PITTSBURGH, STATE/UCC DIVISION,
PA PA
DEBTOR: CHILDREN'S HOSPITAL OF
PITTSBURGH

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
--------------------------------------------------------------------------
COLLATERAL: Accounts receivable and proceeds - Account(s) and proceeds -

General intangibles(s) and proceeds - Chattel paper and proceeds - Contract rights and proceeds
FILING NO: 26171329 DATE FILED: 12/17/1996
TYPE: Original LATEST INFO RECEIVED: 02/03/1997
SEC. PARTY: MELLON BANK NA, PITTSBURGH, PA FILED WITH: SECRETARY OF
DEBTOR: CHILDREN'S HOSPITAL OF STATE/UCC DIVISION,
PITTSBURGH PA

This data is for informational purposes only and is not an official record. Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------
FILING NO: 28490742 DATE FILED: 01/27/1998
TYPE: Assignment LATEST INFO RECEIVED: 02/27/1998
ASSIGNEE: CHASE MANHATTAN TRUST COMPANY ORIG. UCC FILED: 12/17/1996
NATIONAL ASSOCIATION, PITTSBURGH ORIG. FILING NO: 26171329
PA FILED WITH: SECRETARY OF
DEBTOR: CHILDREN'S HOSPITAL OF STATE/UCC DIVISION,
PITTSBURGH PA

This data is for informational purposes only and is not an official record. Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------
COLLATERAL: Accounts receivable and proceeds - Account(s) and proceeds - General intangibles(s) and proceeds - Chattel paper and proceeds - Contract rights and proceeds
FILING NO: 26171325 DATE FILED: 12/17/1996
TYPE: Original LATEST INFO RECEIVED: 02/03/1997
ASSIGNEE: MELLON BANK NA, PITTSBURGH, PA FILED WITH: SECRETARY OF
DEBTOR: CHILDREN'S HOSPITAL OF STATE/UCC DIVISION,
PITTSBURGH PA

This data is for informational purposes only and is not an official record. Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------
FILING NO: 28490744 DATE FILED: 01/27/1998
TYPE: Assignment LATEST INFO RECEIVED: 02/27/1998
ASSIGNEE: CHASE MANHATTAN TRUST COMPANY ORIG. UCC FILED: 12/17/1996
NATIONAL ASSOCIATION, PITTSBURGH ORIG. FILING NO: 26171325
PA FILED WITH: SECRETARY OF
DEBTOR: CHILDREN'S HOSPITAL OF STATE/UCC DIVISION,
PITTSBURGH PA

This data is for informational purposes only and is not an official record. Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------
COLLATERAL: Account(s) and proceeds - General intangibles(s) and proceeds - Contract rights and proceeds
FILING NO: 36800156 DATE FILED: 11/04/2002
TYPE: Original LATEST INFO RECEIVED: 02/19/2003
SEC. PARTY: HIGHMARK INC, PITTSBURGH, PA FILED WITH: SECRETARY OF
DEBTOR: CHILDREN'S HOSPITAL OF STATE/UCC DIVISION,
PITTSBURGH OF UPMC HEALTH SYSTEM PA
PITTSBURGH, PA

This data is for informational purposes only and is not an official record. Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------

COLLATERAL: Equipment and proceeds
FILING NO: 30221765 DATE FILED: 05/05/1999
TYPE: Original LATEST INFO RECEIVED: 06/02/1999
SEC. PARTY: KARL STORZ FINANCIAL SERVICES, FILED WITH: SECRETARY OF
DANBURY, CT STATE/UCC DIVISION,
DEBTOR: CHILDREN'S HOSPITAL OF PA
PITTSBURGH

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------------------
COLLATERAL: Computer equipment - Equipment
FILING NO: 20030872385 DATE FILED: 09/03/2003
TYPE: Original LATEST INFO RECEIVED: 01/27/2004
SEC. PARTY: WELLS FARGO FINANCIAL LEASING, FILED WITH: SECRETARY OF
INC., NEWPORT BEACH, CA STATE/UCC DIVISION,
DEBTOR: CHILDRENS HOSPITAL OF PITTSBURGH PA

This data is for informational purposes only and is not an official record.
Certified copies may be obtained from the Pennsylvania Department of State.
------------------------------------------------------------------------

There are additional suits, liens, or judgments in D&B'S
file on this company available by contacting 1-800-223-1026.
END OF DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. KNABB, III, and TRACY L. KNABB, Individually and as Parents and Natural Guardians of Joanne D. Knabb, a Minor,<br><br>    Plaintiffs<br><br>    v.<br><br>INTERNATIONAL BIOMEDICAL, INC., a Texas Corporation, t/d/b/a Airborne Life Support Systems,<br><br>    Defendant and Third Party Plaintiff<br><br>    v.<br><br>STEPHEN G. WOODS, Administrator of the Estate of John E. Bridge, Deceased; CHILDREN'S HOSPITAL OF PITTSBURGH; and GUARDIAN ANGEL AMBULANCE SERVICES, INC.,<br><br>    Third Party Defendants | Civil Action No. 04-215 Erie<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of November, 2005, a copy of the within document was served on all counsel of record and unrepresented parties in accordance with the applicable rules of court.

/s/ James T. Marnen
James T. Marnen

#643697